

Nick Mirr
Federal Defenders of Eastern Washington and Idaho
306 E. Chestnut Ave.
Yakima, Washington 98901
509.248.8920
Attorney for Christopher Vaughn Schlax

United States District Court
Eastern District of Washington
Honorable Stanley A. Bastian

| United States, | No. 1:22-CR-2109-SAB-2 |
|---|---|
| Plaintiff, | Memorandum in Support of Sentencing |
| v. | |
| Christopher Vaughn Schlax, | April 2, 2024 – 2:00 p.m. |
| Defendant. | Yakima—With Argument |

## I. Introduction

Christopher Vaughn Schlax, respectfully submits this memorandum in aid of his sentencing, which is scheduled for April 2, 2024, in Yakima. Mr. Schlax comes before the Court after pleading guilty to three counts of damage by fire in violation of 18 U.S.C. § 844(i). The United States Probation Office (USPO) calculated his advisory guideline range to be 41 to 51 months. However, the mandatory minimum sentence for Mr. Schlax's offense is 60 months. Accordingly, the government and Mr. Schlax will jointly recommend that the Court sentence him as follows;

1) A custodial sentence of 60 months;

2) Three (3) years of supervised release;

3) $300 in special penalty assessments; and

4) Restitution as determined by the Court.

## II. Discussion

**A.   Offense Level & Criminal History**

As mentioned in Mr. Schlax's separately filed PSR Objections,[1] several issues were identified and resolved informally with the USPO. Mr. Schlax has no further objections to the PSR nor his guideline range.

**B.   Departures**

Mr. Schlax does not seek any departures.

---

[1] ECF No. 78 (PSR Objections).

Sentencing Memorandum
– 1 –

**C.     18 U.S.C. § 3553(a)**

In imposing a sentence, the Court is required to undertake an individualized assessment of Mr. Schlax and to "impose a sentence sufficient, *but not greater than necessary*"[2] to accomplish the goals laid out in 18 U.S.C. § 3553. As the Supreme Court observed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an *individual* and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment."[3] Per the plea agreement, the parties will jointly recommend a sentence of 60 months—the mandatory minimum.

Mr. Schlax comes before the Court, unfortunately, as an example of the devastating impact addiction can have on the course of a life. Mr. Schlax has struggled with substance use since he was a child. However, he was able to largely keep things under control until about a decade ago. It was then that Mr. Schlax first began to struggle with methamphetamine. From that point on, Mr. Schlax's life began to deteriorate. Although he was steadily employed, was experiencing bankruptcy and wrestling with his addiction. In the nadir of his financial struggles and methamphetamine use, Mr. Schlax made the immensely regrettable decision to

---

[2] 18 U.S.C. § 3553(a) (emphasis added).
[3] *Gall v. United States*, 552 U.S. 38, 52 (emphasis added) (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

participate in a scheme with his codefendant that led to his appearance in Court today. Although his conduct was exceptionally serious, a 60-month sentence—the mandatory minimum—is sufficient and no greater than necessary to address his part in this offense for the reasons that follow:

*Mr. Schlax's history and characteristics*

Mr. Schlax, in many respects, had a normal and happy childhood. He grew up with his older brother and his parents in the Yakima Valley.[4] His parents provided a happy and healthy home for Mr. Schlax.[5] His father worked as a maintenance mechanic and his mother worked as a substance use counselor.[6] Despite his otherwise happy home, Mr. Schlax began to experiment with controlled substances and alcohol at an early age. He started sneaking alcohol at 10 years old and began to drink heavily in high school.[7] He first used marijuana at 14 and tried cocaine at the age of 18.[8] Mr. Schlax used cocaine daily for approximately 10 years.[9]

Around the time Mr. Schlax began to use harder drugs, he also began to have his first encounters with law enforcement. His criminal history, perhaps unsurprisingly, is reflective of someone with serious substance use issues. It is almost entirely comprised

---

[4] ECF No. 76 at ¶¶145-146.
[5] *Id.* at ¶146.
[6] *Id.* at ¶145.
[7] *Id.* at ¶152.
[8] *Id.* at ¶¶153-154.
[9] *Id.* at ¶154.

Sentencing Memorandum
– 3 –

of driving and alcohol related offenses.[10] Mr. Schlax has, however, been convicted of assault related offenses on three occasions. Importantly all three of these offenses occurred when Mr. Schlax was between the ages of 18 and 22 years old. Indeed, the most recent assault offense—and his most serious sentence to date—occurred nearly 30 years ago in 1997.[11] Mr. Schlax was sentenced to spend 15 months in prison as a result of that offense and largely appears to have learned his lesson. In the intervening three decades, Mr. Schlax has had other legal issues, but nothing involving violent behavior towards others.

     While it is on the positive side that Mr. Schlax has avoided serious legal troubles since his early 20s, his life was by no means free from struggles. Mr. Schlax was married in 2000 and then divorced in 2004.[12] Mr. Schlax has also been dealing with depression since his 20s.[13] In a bright spot, Mr. Schlax attended treatment in 2005, successfully completed the program, and then remained free from drugs until 2013.[14] During the time he was not using drugs, Mr. Schlax had a marked decrease in interactions with law enforcement. Unfortunately, his abstention from drugs did not last.

---

[10] *Id.* at ¶¶52-130.
[11] *Id.* at ¶95.
[12] *Id.* at ¶148.
[13] *Id.* at ¶151.
[14] *Id.* at ¶159.

In 2013, Mr. Schlax went through a difficult break up.[15] During the course of the relationship, he became very attached to his ex-partner's three (3) children.[16] When the relationship became toxic and ultimately ended, Mr. Schlax was hit hard by the children no longer being in his life. Lost, he "reached out for something to numb the pain."[17] Mr. Schlax reached out and found methamphetamine. He became a daily user and continued to use until his arrest. Although Mr. Schlax was employed consistently, he was unable to stay on top of his finances. He was in the process of filing for bankruptcy when he was arrested.[18] It was in this context—spiraling in his drug use and financial troubles—that Mr. Schlax ultimately made the decision to work with Mr. Cantu and engage in the conduct that brings him before the Court for sentencing.

*The nature and circumstances of the offense*

In June of 2022, Mr. Schlax and Mr. Cantu went to a storage facility and Mr. Schlax ultimately set fire to pallets stored outside.[19] This was done with the intention of serving as a distraction while the two burglarized a business. Although no burglary was attempted in June, roughly two weeks later, Mr. Schlax and Mr. Cantu set out again to set a fire as a diversion for a burglary.[20] This time, the two travelled to another

---

[15] *Id*. at ¶155.
[16] *Id*.
[17] *Id*.
[18] *Id*. at ¶169.
[19] *Id*. at ¶¶9-10.
[20] *Id*. at ¶¶12-13.

Sentencing Memorandum
– 5 –

1  agricultural storage business, started a fire, and this time they went to the Dollar Tree
2  in Grandview to attempt a burglary. [21]Mr. Schlax went inside as Mr. Cantu acted as the
3  getaway driver and lookout. While inside, Mr. Schlax attempted to cut into the safe
4  with a power tool and, in the process, inadvertently set a fire.[22] Ultimately, Mr. Schlax
5  left the Dollar Tree after sustaining an injury when the hand sanitizer stored near the
6  safe he was attempting to open exploded.[23]

7        Mr. Schlax understands that the offenses he has pleaded guilty to are incredibly
8  serious. He knows that he will spend a significant time in prison for his involvement in
9  these offenses. But he has taken responsibility for his actions—well in advance of his
10 codefendant—and is ready to begin to make things right. For starters, Mr. Schlax made
11 a confession to law enforcement shortly after he was contacted regarding the offense.
12 Second, Mr. Schlax spoke candidly in his PSR interview about his remorse. He
13 recognized that he was making "terrible choices" and noted that "[i]f I could take it
14 back I would."[24] Mercifully, no one was injured in any of the three fires and Mr. Schlax
15 is thankful that this is the case. It was never his intention to harm anyone.

16       Ultimately, Mr. Schlax knows that his actions were serious and they warrant a
17 serious punishment. Respectfully, a 60-month sentence in addition to the massive

---

[21] *Id.* at ¶¶13-23.
[22] *Id.* at ¶¶22-23.
[23] *Id.*
[24] *Id.* at ¶30.

Sentencing Memorandum
– 6 –

amount of restitution he has agreed to pay adequately accounts for the nature and circumstances of his conduct.

> *A 60-month sentence, plus an immense amount of restitution, will ensure that Mr. Schlax will be greatly deterred, sufficiently punished, and adequately protects the public.*

Prior to the sentence that will be imposed by this Court, the longest Mr. Schlax has spent in prison was 15 months.[25] He was arrested in November of 2022 and has remained in continuous custody since that time. Accordingly, by the time Mr. Schlax appears for his sentencing hearing in April, he will have already been in custody for about 17 months—longer than any previous time spent in custody. The entirety of this time has been in local jails where there is a dearth of programming.

Further, Mr. Schlax has agreed to pay an immense amount of restitution for his role in this offense. Specifically, he has already agreed to pay $1,543,067.60 in his plea agreement.[26] He anticipates paying a further $1,844,722 for the second fire and an as-of-yet undetermined amount for the final fire. Accordingly, Mr. Schlax can reasonably expect to be ordered to pay around $5 million in restitution—something he will be working towards for the rest of his life—for his conduct that occurred over a roughly

---

[25] *Id.* at ¶95.

[26] ECF No. 71 at 11.

two (2) week timeframe. The deterrent effect of five (5) years in federal prison and an anticipated approximately $5 million in restitution is hard to overstate.

Reinforcing further the appropriateness of a 60-months sentence, it is actually beyond what was contemplated by the Sentencing Guidelines for Mr. Schlax's conduct. As noted in his PSR, Mr. Schlax was considered a "0 point offender" and most of his criminal history is old.[27] His criminal history category was a I, and his total offense level was calculated to be a 22[28]. The guidelines, thus, suggested a sentence of between 41 and 51 months.[29] Because Congress has decided, however, to impose a mandatory minimum sentence for this offense, the guidelines have been overridden and supplanted Mr. Schlax's guideline range.

Finally, a 60-month sentence appropriately protects the public from Mr. Schlax. As noted above, Mr. Schlax is far removed from his days of violence. He had three convictions for assault related conduct that occurred around 30 years ago. Since then, Mr. Schlax has not shown himself to be a danger in terms of violence to the community. Although there was certainly a risk of harm inherent in his conduct, Mr. Schlax and Mr. Cantu acted at night, when employees would not be at the businesses involved and did not harm anyone in carrying out their plan.

---

[27] ECF No. 76 at ¶45.

[28] *Id*. at XXX

[29] *Id*. at ¶172.

In sum, a 60-month sentence in combination with the massive amount of anticipated restitution sends an exceptionally strong deterrent message to Mr. Schlax. He will be removed from the community for five (5) years to consider his actions and the risk they posed to others. The community will be served and protected sufficiently by the jointly requested sentence of 60 months.

*A 60-month sentence appropriately accounts for the fact Mr. Schlax still has pending state charges.*

As a final note, when Mr. Schlax leaves the Courtroom after his sentencing, he still will not have finality. This is because there are several other unresolved state charges stemming from the same course of conduct undertaken by Mr. Schlax and Mr. Cantu. Although there have been discussions with the state prosecution and a concurrent sentence is anticipated, there is no guarantee this will come to fruition. In addition, there remains the logistical complication of the relevant state participants seeking and obtaining a writ to permit Mr. Schlax to appear in state court.

Practically, what this means for Mr. Schlax is that he will be left with uncertainty as to his ultimate sentence. Not only in terms of what sentence the state imposes, but also in terms of whether he will even be able to appear in state court. If Mr. Schlax is not able to resolve his state charges prior to entering BOP custody, he could have a detainer placed on him. This would prevent Mr. Schlax from entering a halfway house

towards the end of his sentence and it will also impact his custody classification level, which could indirectly impact what programming is available to him.

Accordingly, Mr. Schlax respectfully requests the Court take this uncertainty about his future into consideration when imposing his sentence.

### III.     Conclusion

Mr. Schlax has committed a serious wrong and he understands a serious term of imprisonment is warranted in this case. However, Mr. Schlax will release from prison in his 50s with a federal arson conviction following him. He will be making restitution payments for the rest of his life. A 60-month sentence recognizes the reality of his conduct but simultaneously accounts for the role addiction and the poor decision making that accompanies it played in his conduct. It will also send an exceptionally strong deterrent message to Mr. Schlax who has never before served a sentence close to this length. Equally as important, however, is that a 60 month sentence will allow Mr. Schlax to leave prison while he is still relatively young and allow him to reenter the workforce so he can make restitution payments and begin to heal the damage he has caused.

For the reasons discussed above, Mr. Schlax respectfully requests this Court adopt the parties' joint recommendation and impose a sentence of 60 months, followed by three (3) years supervised release, and impose the $300 in mandatory special penalty assessments.

Dated: March 18, 2024.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Christopher Vaughn Schlax

s/ Nick Mirr
Nick Mirr, AT0014467
Iowa State Bar Ass'n
306 E. Chestnut Ave.
Yakima, Washington 98901
t: (509) 248-8920
nick_mirr@fd.org

Service Certificate

I certify that on March 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Courtney Pratten.

s/ Nick Mirr
Nick Mirr, AT0014467
Iowa State Bar Ass'n
306 E. Chestnut Ave.
Yakima, Washington 98901
t: (509) 248-8920
nick_mirr@fd.org