Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Courtney R. Pratten
Assistant United States Attorney
402 E. Yakima Avenue, Suite 210
Yakima, Washington 98901
(509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO: 1:22-CR-2109-SAB-2 |
| Plaintiff, | |
| vs. | PLAINTIFF'S SENTENCING MEMORANDUM |
| CHRISTOPHER VAUGHN SCHLAX, | |
| Defendant. | |

The United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Courtney R. Pratten, Assistant United States Attorney, submits the following Sentencing Memorandum. For the reasons stated below, under the applicable United States Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the United States recommends the Court impose a 60-month term of incarceration followed by a three-year term of supervised release. Additionally, the United States recommends

the Court impose joint and several restitution, payable to Capital Insurance Group in the amount of $1,543,067.60, as well as an additional amount of restitution owing to Lineage Logistics and the Dollar Store that will be determined at the time of sentencing.

I.  Base Offense Level and Enhancements

The Presentence Investigation Report (PSIR) provides for a total offense level of 22, and a criminal history category of I, yielding a recommended Guidelines range of 60 months. ECF 76, ¶ 191. The United States agrees with the Guideline calculations in the PSIR. Further, the United States does not have any objections to the PSIR.

II.  Departures

The United States does not seek any departures in this matter.

The Guidelines are the starting point and the initial benchmark for the sentencing process. *Kimbrough v. United States*, 128 S. Ct. 558 (2007). The Court "take[s] into account the totality of the circumstances" to determine whether a sentence is reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

III.  Sentencing Factors Under 18 U.S.C. §3553(a)

1.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

On June 27, 2022, Defendant and his friend, Mr. Gregorio Cantu, went to Linage Logistics warehouse, located at 62 Old Inland Empire in Grandview,

Washington and set fire to several wooden pallets. ¶ 9. The Grandview Police Department (GVPD) responded to the fire, and, with the assistance of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), discovered the fire had caused approximately $700,000.00 in damage. *Id.* It was later discovered Defendant set this fire intentionally to distract law enforcement so that Defendant and his friend could attempt to burglarize the Grandview Dollar Tree. ¶ 10.

Approximately one week later, on July 4, 2022, Defendant and Mr. Cantu drove to the vicinity of River Valley Fruit at 108 Birch Avenue in Grandview, Washington, with the goal of setting another fire to distract from another burglary of the Grandview Dollar Tree. ECF 71, ¶ 7. The fire caused significant damage to River Valley Fruit's property and resulted in River Valley Fruit's insurance company eventually settling the claim for approximately $1,543,067.60. *Id.* A few hours after responding to the fire at River Valley Fruit, GVPD responded to a reported fire at the Grandview Dollar Tree. ECF 76, ¶ 13. That fire resulted in property loss estimated to be $2,057,000.00. ECF 71, ¶ 7.

On July 7, 2023, Defendant gave a statement to officers from the GVPD. ECF 76, at ¶ 21. He initially denied his involvement in burglarizing or participating in arson of the Grandview Dollar Tree. *Id.* He then started speaking about the crimes Mr. Cantu committed. *Id.* During that part of the interview, Defendant started distancing himself from those crimes. *Id.* Eventually, he admitted he accidentally set the fire at Dollar Tree. *Id.*

Defendant further explained to law enforcement that he had stashed a ladder in the weeds near the Dollar Tree earlier in the day on July 4, 2022. *Id.* at ¶ 22. He later used a cutting torch to gain access to the store and while he was attempting to access the store's safe, he caught a bottle of hand sanitizer on fire. *Id.*

In addition to the above, when Defendant was speaking to law enforcement, he admitted to participating in more events in the timeframe of 2021 and 2022. *Id.* at ¶ 23, ¶ 24. He admitted to breaking into the Dollar Tree on December 27, 2022, and knowing about a fire that had been set as a distraction, and he admitted to burglarizing the Grandview Market on April 4, 2022. *Id.* Finally, Defendant also admitted to burglarizing Ace Hardware in Sunnyside, and an attempted burglary of the Naches Dollar Tree over the winter. *Id*. at ¶ 24.

Though Defendant's criminal history spans nearly a decade and a half, from 1993 through 2018, his criminal history score remains 0. *Id*. at 131. However, a careful analysis of his criminal convictions, as well as other matters noted in Part B of the PSIR, is needed when it comes to the Court's analysis of Defendant's criminal history and characteristics as they relate to the 18 U.S.C. 3553(a) assessment.

The Defendant, by his own admission, has a substance abuse issue. *Id*. at ¶ 31. Since he was a teenager, he has accumulated multiple drinking-related law violations, with some of those resulting in driving-related violations. His drinking-related violations have varied in corresponding punishment from fines to jail terms that were mostly suspended or deferred. *Id*. at ¶ 64, ¶ 74, ¶ 77, ¶ 79, ¶ 86, ¶ 105.

GOV'T SENT. MEMO.                                 4

Defendant has three prior convictions for assault. He has also engaged in other types of behavior indicative of disrespect for the property of others, disrespect for the authority of law enforcement, and disregard for the safety and well-being of others. For example, in 1998, Defendant was involved in an argument with an individual and he ended up threatening to kill the individual and pointing a .38 caliber semi-automatic handgun at her. *Id.* at ¶ 97. Just the year prior, Defendant had contact with law enforcement in which he refused to stay in his vehicle, became verbally abusive to officers, and eventually kicked out the window of a patrol vehicle. *Id.* at ¶ 94.

Though none of Defendant's prior convictions for alcohol-related offenses or assault, and none of his conduct regarding pointing a gun at someone or kicking out the window of a patrol vehicle reflect in his criminal history score, those instances are telling when considered with the facts in the current case. And they are telling regarding any analysis of Defendant's history and characteristics. In the current case, Defendant repeatedly set fire to the property of others with little to no thought given to subsequent effects on others. When he set those fires, he not only damaged property that did not belong to him, but he was willing to risk the possibility of hurting both members of the public as well as first responders and law enforcement. He also seems to have given little to no thought to the resources he was diverting from other emergencies as law enforcement was responding to the various dangerous situations he was creating. And all this behavior, as well has his past-noted behavior,

GOV'T SENT. MEMO. 5

consistently demonstrates Defendant routinely does not care for or respect the property or lives of others.

    2. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide just Punishment.</u>

Defendant's conduct was extremely serious, and he caused a lot of property damage through his actions. He was the willing participant in, and sometimes the initiator of, multiple plans to start fires to distract and divert law enforcement resources so that he could commit other crimes. As stated above, he diverted emergency response resources from the community over and over. He repeatedly damaged the property of others. A lot of this damage was beyond repair and all of it resulted in victim businesses needing to go through the time-intensive and stressful process of filing insurance claims on damaged or destroyed property. In the case of the Dollar Tree, his conduct had potential further-reaching implications for the employees and, by extension, their families who would have been affected by the Dollar Tree fire.

Defendant has not historically shown much respect for the law. As noted above, he has repeatedly violated the laws concerning alcohol consumption and the laws governing the safe and legal operation of motor vehicles on the roadway. His interactions with law enforcement include three convictions for resisting arrest, two convictions for obstructing a law enforcement officer, and a kicked-out window of a patrol vehicle. *Id.* at ¶59, ¶77, ¶94, ¶102, ¶112, ¶115. Additionally, the PSIR reflects

multiple instances of Defendant failing to appear at hearings, comply, and even twice failing to appear for service of sentence. *Id.* at ¶66.

   3. <u>The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.</u>

A 60-month sentence of incarceration should be adequate to deter further criminal conduct by the defendant – as well as to deter similarly-situated defendants who are tempted set multiple fires and potentially endanger lives and/or property in the same manner. This will be the longest term of incarceration Defendant has ever faced and it will be for the most serious crimes he has ever been convicted of. It is a serious term of incarceration and one that should more than deter him from anything resembling the actions he took in June, July, and December 2022. Because the United States anticipates the sentence will act as an effective means of specific deterrence, the United States also anticipates it will effectively protect the public from further crimes Defendant may commit.

IV.

For the reasons outlined above, the United States recommends that the Court impose a sentence of 60-months incarceration. The Government further recommends this term of incarceration be followed by a three-year term of supervised release. Moreover, the Government recommends the Court impose restitution payable to Capital Insurance Group in the amount of $1,543,067.60, be imposed on Defendant joint and several with the codefendant in the case, as well as an additional amount of

GOV'T SENT. MEMO.                                 7

restitution owing to Lineage Logistics and the Dollar Store and to be determined at the time of sentencing.

DATED this 18th day of March, 2024.

        VANESSA R. WALDREF
        United States Attorney

        */s/Courtney R. Pratten*
        Courtney R. Pratten
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification to the counsel of record in this case.

        */s/ Courtney R. Pratten*
        Courtney R. Pratten
        Assistant United States Attorney
        United States Attorney's Office
        402 E. Yakima Ave., Suite 210
        Yakima, WA 98901
        (509) 454-4425